**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00763-REB

KENNETH D. BARNES,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed March 25, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as degenerative joint disease of the ankle, lower back pain, depression, and anxiety. After his application for supplemental security income benefits was denied, plaintiff requested a hearing before an

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

administrative law judge. This hearing was held on February 15, 2012. At the time of the hearing, plaintiff was 42 years old. He has a general equivalency diploma and past work experience as a clamper, furniture assembly supervisor, painter, and glazer. He has not engaged in substantial gainful activity since June 21, 2010, the date of his application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a range of sedentary work with postural, environmental, and non-exertional limitations. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that he could perform. The ALJ therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four

steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III.  LEGAL ANALYSIS

Plaintiff alleges that the ALJ erred in a number of ways.  I find no error warranting remand in the ALJ's assessment of the medical opinions of record or of plaintiff's credibility, or in his determination regarding medical equivalence.  Nevertheless, I concur with plaintiff that the ALJ's decision fails to sustain the Commissioner's burden at step 5 of the sequential evaluation, and therefore remand.

Plaintiff's suggestion that the ALJ committed error at step 3 of the sequential evaluation by not obtaining an updated opinion on medical equivalence from a medical expert is unavailing.  "While the ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled, the ALJ must receive state agency doctors' judgments on the issue of medical equivalence into the record as expert opinion evidence."  **Carbajal v. Astrue**, 2011 WL 2600984 at *2 (D. Colo. June 29, 2011) (citation and internal quotation marks omitted).  *See also* **Social Security Ruling** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996) ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.").  The requirement that medical equivalence be established by the opinion of a medical expert is satisfied, *inter alia*, by the signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).  **Social Security Ruling** 96-6p, 1996 WL 374180 at *3.  The record in this case contained *two* such forms, one dated October 13, 2010 (Tr. 74), the other

January 11, 2011 (Tr. 75). Nevertheless, plaintiff insists that an updated opinion was required because the record contained additional medical evidence that might have changed the State agency medical or psychological consultants' findings that plaintiff's impairments were not equivalent in severity to any impairment in the Listing of Impairments. **See Social Security Ruling** 96-6p, 1996 WL 374180 at *3-4. I disagree.

Contrary to the implicit assumption of plaintiff's argument, the Commissioner's guidelines do not *require* the ALJ to obtain an updated medical opinion in these circumstances, but rather give him discretion to determine whether an updated opinion is necessary. **See id.** The new evidence that plaintiff suggests might have changed the determination of medical equivalence is the report of plaintiff's most recent treating physician, Dr. Jon Shick. (**See** Plf. Opening Br. at 19.) As noted in more detail below, the ALJ considered Dr. Shick's opinions, but rejected them as unsupported by the medical and other evidence of record. Having throughly and properly considered this evidence, the ALJ was well within his discretion to have determined, at least implicitly, that an updated opinion on equivalence was unnecessary because the evidence was unlikely to change the state agency consultant's medical opinion. **See McCaffrey v. Astrue**, 2011 WL 4536980 at *5 (D. Colo. Sept. 30, 2011).

The ALJ rejected Dr. Shick's opinion regarding plaintiff's work-related abilities, which essentially would have rendered him incapable of competitive employment. (**See** Tr. 39-40, 788-791.) Instead, he gave "great weight" to the opinion of an independent medical examiner, Dr. Paul Biewen, who concluded, based on his examination of plaintiff and review of his medical records, that there was no objective

medical evidence to substantiate plaintiff's claims of disabling pain and that he had no impairment that warranted any degree of limitation on his work-related abilities. (Tr. 31-32, 740-756.)

I perceive no reversible error in this determination. Although it would have been inappropriate to discredit Dr. Shick's opinion only on the basis of his limited treatment of plaintiff while simultaneously assigning great weight to the opinion of a medical examiner who interacted with plaintiff only once (Tr. 32, 39), *see Sanchez v. Astrue*, 2009 WL 4810696 at *4 n.5 (D. Colo. Dec. 10, 2009), the nature and extent of the treatment relationship is, in fact, a valid consideration, *see* 20 C.F.R. § 416.927(c)(2)(i). Moreover, although the opinion of a treating source is generally entitled to controlling weight, 20 C.F.R. § 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), it may be rejected for good cause based on specific, legitimate reasons clearly articulated in the hearing decision, *Watkins*, 350 F.3d at 1301. Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Here, the ALJ gave other, valid, supportable reasons for his determination in this regard, most significantly, that Dr. Shick's opinion was inconsistent with his own treatment notes and the other evidence of record. (Tr. 39.) This determination is borne out by the ALJ's exceedingly thorough and careful examination of the entirety of the voluminous record in this case and provides nothing warranting remand.

In addition, I can find no basis to suggest that the ALJ committed reversible error in his assessment of plaintiff's credibility. "[C]redibility determinations 'are peculiarly the

province of the finder of fact,' and should not be upset if supported by substantial evidence." **White**, 287 F.3d at 909 (citing **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; **see also Qualls v. Apfel**, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's analysis of the medical and other evidence in this case was perspicacious and thorough. Every point relied on by the ALJ in support of his determination that plaintiff's subjective reports of pain were not fully credible is both circumstantiated by the record and supported by relevant caselaw. **See, e.g.**, **Poppa v. Astrue**, 569 F.3d 1167, 1171-72 (10th Cir. 2009) (evidence of drug-seeking behavior appropriately considered in evaluation of credibility);[2] **Jack v. Astrue**, 2010 WL 3615022 at *3 (D. Colo. Sept. 10, 2010) (activities of daily living "bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations") (citation and internal quotation marks omitted). I therefore perceive no reversible error on this basis either.

Nevertheless, despite the obvious care which the ALJ took in fashioning his opinion, I find that his ultimate determination must be reversed because his opinion regarding the availability of alternative jobs within plaintiff's residual functional capacity is not based on substantial evidence. More specifically, there is an unexplained conflict between the ALJ's determination of plaintiff's mental residual functional capacity and the

---

[2] Contrary to plaintiff's argument, the ALJ did not rely on the fact that plaintiff was formerly incarcerated in evaluating his credibility. Instead, he noted that plaintiff had been incarcerated for selling prescription drugs, which tended to confirm his assessment that plaintiff had engaged in a pattern of drug-seeking behavior. (Tr. 32.)

mental requirements of the alternative jobs on which he ultimately relied in finding plaintiff capable of other work in the local and national economy.

The law in this circuit is clear:

> [W]hen a claimant retains the mental RFC to perform only "simple and routine work tasks" – and the ALJ finds a claimant not disabled at step five based on a vocational expert's testimony that the claimant is able to perform jobs with a reasoning level of three – a finding that the claimant was not disabled at step five is not based upon substantial evidence.

*Duran v. Astrue*, 654 F.Supp.2d 1298, 1303 (D. Colo. 2009) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). In response to questions by plaintiff's attorney, the vocational expert testified that all the alternative sedentary jobs she identified in response to the ALJ's hypothetical required a reasoning level of 3. (*See* Tr. 69, 72.) The ALJ stated that he believed the limitations to a specific vocational preparation ("SVP") of 1 or 2, as well as the provision for "low stress jobs requiring only occasional decision making an no strict production quotas" (Tr. 28), accounted for these differences (Tr. 70-71). However, he did not query the vocational expert to confirm his suppositions in this regard.

I cannot agree with the ALJ's assumption that the limitations he imposed in crafting plaintiff's mental residual functional capacity adequately account for an ability to perform work requiring level 3 reasoning. A reasoning level of 3, as defined by the *Dictionary of Occupational Titles* ("DOT") presupposes the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in

or from standardized situations." DOT, Appx. C: Components of the Definition Trailer § III (available at http://www.occupationalinfo.org/appendxc_1.html) (last accessed March 20, 2014).  SVP, on the other hand, "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* § II. There clearly is a disconnect between these two concepts, which is perhaps unsurprising given that they comprise distinct components of the definition trailer.  Nor is it pellucid that a limitation to low stress jobs with only occasional decisionmaking corresponds with any precision to jobs that require a reasoning level of 3.  Although the vocational expert possibly could have shed some light on this issue, she was not asked for confirmation or clarification of her opinion in this regard.

I find that the failure to more fully explore these inconsistencies constituted reversible error warranting remand for reconsideration of this narrow and discrete issue. Although plaintiff requests a directed award of benefits, I find that this case clearly does not present circumstances warranting an exercise of my discretion in that regard.[3]

### IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

   a.   Solicit further vocational expert testimony or otherwise further

---

[3] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

        develop the record as he deems necessary to substantiate a determination as to whether there are other jobs in the local and national economies that are within plaintiff's residual functional capacity as previously assessed;

    b. Reassess his determination at step 5 of the sequential evaluation; and

    c. Reassess the disability determination; and

3. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated March 20, 2014, at Denver, Colorado.

                                              **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge